**FILED**

FILED-ED4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 3 1 2003

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

UNITED STATES OF AMERICA *ex rel.*     )
BERNARD LISITZA, STATE OF ILLINOIS *ex* )
*rel.* BERNARD LISITZA, STATE OF        )
CALIFORNIA *ex rel.* BERNARD LISITZA,   )
STATE OF DELAWARE *ex rel.* BERNARD     )
LISITZA, DISTRICT OF COLUMBIA *ex rel.* )
BERNARD LISITZA, STATE OF FLORIDA *ex*  )
*rel.* BERNARD LISITZA, STATE OF HAWAII )
*ex rel.* BERNARD LISITZA, STATE OF     )
LOUISIANA *ex rel.* BERNARD LISITZA,    )
STATE OF MASSACHUSETTS *ex rel.*        )
BERNARD LISITZA, STATE OF NEVADA *ex*   )
*rel.* BERNARD LISITZA, STATE OF        )
TENNESSEE *ex rel.* BERNARD LISITZA,    )
STATE OF TEXAS *ex rel.* BERNARD        )
LISITZA, STATE OF VIRGINIA *ex rel.*    )
BERNARD LISITZA, and BERNARD            )
LISITZA, individually,                  )
                                        )
           Plaintiffs,                  )
                                        )
       v.                               )
                                        )
CVS CORPORATION,                        )
                                        )
           Defendant.                   )

# 03 C 00742

No. 03 C _____

CHIEF JUDGE KOCORAS

**FILED UNDER SEAL**

**JURY TRIAL DEMANDED**

JUDGE KOCORAS

MAGISTRATE JUDGE NOLAN

**COMPLAINT**

January 31, 2003

### Table of Contents

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   RELATOR LISITZA'S DISCOVERY OF THE FRAUD . . . . . . . . . . . . . . . . . . . . . . . . 5

V.    DEFENDANT'S KNOWING SUBMISSION OF FALSE CLAIMS . . . . . . . . . . . . . . . 6

      A.    CVS's Government Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    CVS's Scheme to Defraud the Government . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    CVS's Falsely Inflating Prescription Charges through Illegally
            Changing Dosage Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VI.   DAMAGES TO THE GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

COUNT I
      False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

COUNT II
      Illinois Whistleblower Reward and Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . 13

COUNT III
      California False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

COUNT IV
      Delaware False Claims and Reporting Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

COUNT V
      District of Columbia False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COUNT VI
      Florida False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

COUNT VII
      Hawaii False Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

COUNT VIII
      Louisiana Medical Assistance Programs Integrity Law . . . . . . . . . . . . . . . . . . . . . . . 20

COUNT IX
    Massachusetts False Claims Act .......................................... 21

COUNT X
    Nevada False Claims Act ................................................ 22

COUNT XI
    Tennessee Medicaid False Claims Act ..................................... 23

COUNT XII
    Texas Medicaid Fraud Prevention Act ..................................... 24

COUNT XIII
    Virginia Fraud Against Taxpayers Act .................................... 25

JURY DEMAND ............................................................. 26

PRAYER ................................................................. 27

Now comes the United States of America *ex rel.* Bernard Lisitza, the States of Illinois, California, Delaware, Florida, Hawaii, Louisiana, Massachusetts, Nevada, Tennessee, Texas, Virginia, and the District of Columbia *ex rel.* Bernard Lisitza, and Bernard Lisitza, individually (collectively "plaintiffs"), stating as follows for their Complaint against CVS Corporation:

## I.   INTRODUCTION

1.     This is an action by both the United States of America and the States of Illinois, California, Delaware, Florida, Hawaii, Louisiana, Massachusetts, Nevada, Tennessee, Texas, Virginia, and the District of Columbia through the Relator Bernard Lisitza ("Relator Lisitza" or "Lisitza"), to recover treble damages and civil penalties arising from false statements and claims made or caused to be made by defendant CVS Corporation ("CVS") to the United States Government ("United States") and to the governments of the States of Illinois, California, Delaware, Florida, Hawaii, Louisiana, Massachusetts, Nevada, Tennessee, Texas, Virginia, and the District of Columbia (collectively referred to as the "Government"), in violation of the federal False Claims Act, 31 U.S.C. §§3729-32, and analogous state statutes.[1]

2.     CVS owns and operates a nationwide chain of retail pharmacies. CVS has defrauded and continues to defraud the government by altering prescriptions for a popular antacid in order to inflate government reimbursements by as much as 400%. The drug, ranitidine, is the

[1]Specific citations for relevant state *qui tam* statutes are as follows: The Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*; the California False Claims Act, Cal. Gov. Code §12651(a); the Delaware False Claims and Reporting Act, Del. Stat. Tit. VI. §1201; the District of Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*; the Florida False Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439; the Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A); the Nevada False Claims Act, Nevada Rev. Stat. §357.010 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*; and the Virginia Fraud Against Taxpayers Act, Ch. 3, Title 8.01, Article 19.1 *et seq.*

generic form of the medication Zantac. Over the past five years, it has been among the most popular antacids prescribed by physicians.

3.     Generic ranitidine comes in two forms: tablets, the standard prescribed form of the medication, and capsules, which are almost never specifically indicated or prescribed. Because ranitidine *tablets* are prescribed so frequently, the Centers for Medicare & Medicaid Services (formerly the Health Care Financing Administration) has set a Federal Upper Limit price for the tablets.

4.     State Medicaid regulations determine how much a pharmacy is reimbursed for a particular prescription. For example, per Illinois Medicaid regulations, the Federal Upper Limit price is the maximum Illinois Public Aid will reimburse pharmacies that distribute ranitidine tablets. 89 Il. Adm. Code. 140.445(b)(1)(B).

5.     Because ranitidine *capsules* are prescribed so infrequently, however, no Federal Upper Limit price exists. Instead, Illinois Public Aid reimburses for capsules at a market-derived price (based on the average wholesale price) determined by the state. 89 Il. Adm. Code. 140.445(b)(1)(A) and (D). The prevailing market price for ranitidine capsules typically runs from two to four times the Federal Upper Limit price for ranitidine tablets.

6.     At some point before the year 2000, CVS began to take advantage of the discrepancy in reimbursement rates by systematically instructing its pharmaceutical staff to either alter prescriptions from tablets to capsules or to substitute capsules for tablets without seeking a physician's permission, in violation of state and federal law. Moreover, in order to create the appropriate conditions to illegally maximize their ranitidine reimbursement, CVS made ranitidine capsules the only form of generic ranitidine readily available to their retail customers

2

(and therefore to most CVS customers).  As further detailed below, CVS is liable for treble damages and penalties because they used this scheme to obtain reimbursement for millions of dollars in false claims for inflated and unjustified costs.

## II.   JURISDICTION AND VENUE

7.      This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§3729-3730.  This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and, (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

8.      This court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §1367.

9.      This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

10.     To the extent that there has been a public disclosure unknown to Lisitza, Lisitza is an original source under 31 U.S.C. §3730(c)(4) and all relevant state statutes.[2]  He has direct and

---

[2]Lisitza is also an original source under all requirements found in plaintiff state *qui tam* statutes. Illinois (740 ILCS 175/4(c)(4)); California (Cal. Gov. Code §12652(a)(d)(3)(B)); Delaware (Del. Stat. Tit. VI. §1206(c)); District of Columbia (D.C. Stat. §2-308.15(c)(2)(A)); Florida (Fl. Stat. §68.087(3)); Hawaii (Haw. Rev. Stat. §661-28); Louisiana (La. Rev. Stat. §439.1(B)(1) and (2)); Massachusetts (Mass. Gen. Laws c.12 §§5(A), 5(G)(3)); Nevada (Nevada Rev. Stat. §357.100); Tennessee (Tenn. Stat. §75-1-183(d)(2)(A) and (B)); Texas (Tx. Human Resources Code, Ch. 36, §36.113); and Virginia (Ch. 3, Title 8.01, Article 19.1 §8.01-216.8).

independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

11.     Plaintiff Lisitza is concurrently providing to the Attorney General of the United States, to the United States Attorney for the Northern District of Illinois, and to the Attorneys General of other plaintiff states a statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2) and relevant state statutes.[3] This disclosure statement is supported by material evidence.

12.     This court has personal jurisdiction over defendants under 31 U.S.C. §3732(a) because defendant submitted false or fraudulent claims directly or indirectly to the Government through its Illinois facilities, and defendant has made, used, or caused to be made or used, false or fraudulent records in this District to get false or fraudulent claims paid or approved by the Government. Defendant can be found in, is authorized to transact business in, and is now transacting business in this District. Venue is proper in this District under 31 U.S.C. §3732(a) and 28 U.S.C. §1391.

**III.     PARTIES**

13.     Plaintiff and Relator Bernard Lisitza is a citizen and resident of the State of Illinois. He brings this action on his own behalf and on behalf of the Government pursuant to 31

---

[3]State *qui tam* "disclosure statement" requirements are found at: Illinois (740 ILCS 175/4(b)(2)); California (Cal. Gov. Code §12652(c)(3)); Delaware (Del. Stat. Tit. VI, §1203(b)(2)); District of Columbia (D.C. Stat. §2-308.15(b)(3)); Florida (Fl. Stat. §68.083(3)); Hawaii (Haw. Rev. Stat. §661-25(b)); Louisiana (La. Rev. Stat. §439.2(A)(2)(a) and (b)); Massachusetts (Mass. Gen. Laws c.12 §§5(C)(3)); Nevada (Nevada Rev. Stat. §357.080(5)); Tennessee (Tenn. Stat. §75-1-183(2)); Texas (Tx. Human Resources Code, Ch. 36, §36.102(a)); and Virginia (Ch. 3, Title 8.01, Article 19.1 §8.01-216.5(B).

4

U.S.C. §3730(b)(1) and state *qui tam* statutes including the Illinois Whistleblower Reward and

Protection Act, 740 ILCS 175/1 *et seq.*; the California False Claims Act, Cal. Gov. Code

§12651(a); the Delaware False Claims and Reporting Act, Del. Stat. Tit. VI. §1201; the District

of Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*; the Florida False Claims Act, Fl.

Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the

Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439; the Massachusetts

False Claims Act, Mass. Gen. Laws c.12 §5(A); the Nevada False Claims Act, Nevada Rev. Stat.

§357.010 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*; the

Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*; and

the Virginia Fraud Against Taxpayers Act, Ch. 3, Title 8.01, Article 19.1 *et seq.*.

14.     Defendant CVS is a Delaware corporation with its principal place of business in

Woonsocket, Rhode Island.  CVS claims to be "America's #1 pharmacy dispensing prescriptions

in more stores than any other retailer in the nation."  CVS has annual sales of $22 billion,

through approximately 4,000 retail and pharmacy stores in 32 states and the District of

Columbia.

## IV.     RELATOR LISITZA'S DISCOVERY OF THE FRAUD

15.     Plaintiff and Relator Lisitza is a licensed Illinois pharmacist practicing since 1961.

Relator Lisitza works, through a placement agency, for a variety of pharmacies across Illinois on

a temporary basis.  Typically, Lisitza is placed in a pharmacy somewhere in Illinois to substitute

for vacationing pharmacists or where a pharmacy is temporarily short-staffed.

16.     In his role as a pharmacist at Illinois retail pharmacies, Lisitza had the opportunity

to process prescription transfers from pharmacies in Illinois and around the country, including

5

hundreds from pharmacies owned and operated by CVS. As the "receiving pharmacist" for such transfers, Lisitza receives information from pharmacists including the specific medication at issue, the dosage, and the dosage form of the prescription – tablets, capsules, etc.

17.     Relator Lisitza discovered CVS's scheme in his role as a receiving pharmacist for ranitidine prescriptions being transferred from CVS. CVS pharmacists presenting information to facilitate the transfer would indicate that the order had been filled as capsules rather than as tablets. Relator Lisitza would ask the CVS pharmacist why the prescription was for ranitidine capsules rather than tablets, the industry standard. The CVS pharmacist would indicate that CVS had set up its system so that ranitidine tablets were impossible to provide, and that all ranitidine prescriptions were filled as capsules despite what a physician had specifically prescribed.

## V.     DEFENDANT'S KNOWING SUBMISSION OF FALSE CLAIMS

### A.     CVS's Government Business

18.     CVS provides pharmaceuticals for thousands of disabled persons, elderly persons, and military personnel and their families whose benefits are paid by the Government. Specifically, CVS receives millions of dollars annually as reimbursement from the Government for prescriptions provided to persons receiving benefits from Medicaid, Tri-Care/CHAMPUS, and state-operated prescription reimbursement programs (e.g. Illinois SeniorCareRx and Circuit Breaker), as well as other government third-payor health insurance programs.

19.     At all times relevant to this action, CVS has been primarily engaged in providing pharmaceutical services to customers through its retail pharmacies. Many of CVS's pharmaceutical services are provided under contractual agreement with the plaintiff states through state Medicaid provider licensure programs. To participate in these programs, CVS has

6

agreed to provide pharmaceuticals to Medicaid patients, and the state agency overseeing

Medicaid reimbursement (in Illinois, for example, the Illinois Department of Public Aid

("IDPA")) reimburses CVS its costs plus a fixed dispensing fee (meant to provide CVS with a

profit for providing services to Medicaid clients.)

**B.     CVS's Scheme to Defraud the Government**

20.     Since at least the year 2000, on information and belief, CVS regularly inflated the

amount of money billed for ranitidine, the generic form of the medication commercially known

as Zantac and a hugely popular prescription antacid.  While small doses are available "over-the-

counter," higher doses require a prescription.  The ongoing fraudulent practice described herein

involved thousands of relatively small transactions.  On information and belief, CVS utilizes

similar fraudulent practices to receive unauthorized reimbursements on ranitidine capsules in

states across the nation.

21.     CVS pharmacy customers present prescriptions to their pharmacists to have those

prescriptions filled.  CVS bills for those prescriptions according to the insurance held by each

customer.  For clients with third-party payor prescription coverage covered in part by the United

States or state governments, CVS collects any required co-pay from the customer and submits the

remainder of the price to the government-funded third-party payor for reimbursement.

22.     Participation in each state's Medicaid program is determined by regulations set by

each state.  Each state assigns providers a unique identification number which is included on

each electronic claim for reimbursement.  Affixing this number to a claim certifies, under each

state's Medicaid regulations, that as a Medicaid provider, CVS is in compliance with all

applicable federal and state regulations.  As part of each electronic submission to the Illinois

7

Department of Public Aid, for example, CVS affixes its unique Medicaid provider identification number, which serves as an electronic stamp indicating that, as a Medicaid provider, CVS is in compliance with all applicable federal and state regulations. "In order to enroll for participation, providers shall hold a valid, appropriate license where State law requires licensure of medical practitioners, agencies, institutions, and other medical vendors." 89 Ill. Adm. Code. 140.11. "The provider shall agree to comply with the requirements of federal and State laws and not engage in practices prohibited by such laws." 89 Ill. Adm. Code 140.12.

23.     CVS submits Medicaid and other third-party payor claims for instantaneous "adjudication" via computer networks connected to government payor sources (e.g., the Illinois Department of Revenue) or third-party subcontractors who handle processing prescription claims for government third party payors. An "adjudication" involves determining how much of the prescription cost the government third-party payor will pay.

24.     Claims are adjudicated instantaneously; CVS is given a chance to resubmit rejected claims and, on information and belief, is reimbursed on a monthly basis by the state agency responsible for Medicaid reimbursements (e.g. the IDPA) for all approved Medicaid claims. Therefore, CVS makes representations and claims to the Government concerning Illinois Medicaid reimbursement on a daily basis.

25.     Reimbursement rates for Medicaid prescriptions are determined on a state-by-state basis. In Illinois, Medicaid prescription claims are paid at the lower of two rates: (1) the pharmacy's prevailing charge to the general public or (2) the Illinois Department of Public Aid's maximum price plus an established dispensing fee. 89 Il. Adm. Code. 140.445. Generally,

8

pharmacies can make more money on those medications for which IDPA has not set a maximum price.

26.     Illinois sets maximum prices different than a pharmacy's prevailing charge to the general public for several frequently-prescribed medications in order to control Medicaid pharmacy program costs.  When IDPA intends to set a maximum price for a frequently prescribed medication, it sets the price according to federal and state guidelines at a rate that allows the pharmacy distributor a small distribution fee.

27.     The specific medication at issue in the instant case, generic ranitidine, has a maximum price (known as a "Federal Upper Limit" price) different from the prevailing market price for the *tablet* form only because capsules are appropriately prescribed so infrequently. Because the *tablet* form of ranitidine is reimbursed at a maximum rate determined by federal and state regulations while the capsule form is reimbursed at the prevailing price, ranitidine capsules are substantially more lucrative than tablets for pharmacies.

28.     In Illinois, therefore, ranitidine tablets are reimbursed at the Federal Upper Limit price of $0.34 per 150 mg tablet. *See* Medicaid Provider Handbook, "Specific Limits for Multiple Source and Other Drugs," at *http://www.cms.gov*, visited January 17, 2003.  150 mg ranitidine capsules are reimbursed at a market-based rate derived from wholesale prices that is 200%-400% higher than the Federal Upper Limit tablet reimbursement rate.

29.     To facilitate this scheme, CVS management informed all pharmacists that CVS corporate policy established a preference for ranitidine capsules.  CVS management stated that choosing ranitidine capsules would both help maximize that portion of CVS profit for which

9

each pharmacist is responsible, and would help increase bonuses available to pharmacists at the end of each fiscal year.

30.     In order to take advantage of the Medicaid pricing differential between ranitidine tablets and capsules, CVS took steps to illegally change all tablet prescriptions for their customers to capsule prescriptions.

31.     CVS's pharmaceutical distribution system is set up so that it is nearly impossible to fill a prescription for generic ranitidine with ranitidine tablets.  Upon receiving tablet prescriptions, CVS's pharmacy personnel could not process the orders as written, but instead filled the prescriptions with capsules.

32.     CVS pharmacists can switch between dosage forms in the CVS pharmaceutical dispensing computer system.  For most CVS refills the CVS pharmacist received a prescription for ranitidine tablets and switched it to ranitidine capsules.

33.     CVS pharmacists did not obtain physician authorization, even though it is legally required to switch between dosage forms.

### C.     CVS's Falsely Inflating Prescription Charges through Illegally Changing Dosage Forms

34.     Ranitidine capsules and tablets are not considered the same medication under federal and state law.[4]  A pharmacy cannot unilaterally switch between one form of ranitidine and another without a physician's express order.  In the normal course of business ranitidine capsules are rarely, if ever, prescribed.  By altering the prescriptions to prescribe capsules rather than

---

[4]*See e.g.*, "Preface," *Approved Drug Products with Therapeutic Equivalence Evaluations*, electronic copy at Food and Drug Administration Publications web site, *http://www.fda.gov/cder/ob/default.htm*, visited January 27, 2003, 77 Ill. Adm. Code 790.200 ("Drug products are pharmaceutically equivalent if they [...] are identical in dosage form [...]").

10

tablets or by substituting capsules for tablets without express physician authorization, CVS violated federal and state regulations concerning appropriate pharmaceutical care.

35.     On information and belief, CVS's corporate practice of switching drugs to obtain higher medicaid reimbursements is not limited to ranitidine. CVS can improperly obtain higher reimbursements wherever a similar pricing differential exists for drugs that can be switched.

36.     By switching prescription dosage form from tablets to capsules, CVS was able to bill and receive substantially more money from IDPA than IDPA should have paid. The market rate for capsules, billed illegally by CVS, is some two to four times higher than the appropriate Federal Upper Limit price for ranitidine tablet (the price at which CVS should have been reimbursed had tablets been prescribed). By switching dosage forms illegally, CVS overbilled the government by millions of dollars.

37.     CVS has within its exclusive possession and control documents that would allow plaintiffs to plead this fraud with greater specificity, including specific damages. Documents that would reflect the fraud include: the original prescriptions submitted by CVS customers compared with the orders entered into CVS's pharmacy data system; changes in CVS's billing to IDPA for ranitidine demonstrating a sudden and abrupt change from tablets to capsules and a sharp increase in IDPA reimbursements; and wholesale order records for ranitidine capsules and tablets.

## VI.    DAMAGES TO THE GOVERNMENT

38.     On information and belief, given the extent and magnitude of the fraud, this fraud was instigated by high-level CVS corporate officers. Therefore, similar false claims are currently

11

being made to all states' Medicaid programs where Medicaid reimbursement differentials allow

CVS to maximize their reimbursements.

39.    The scheme described above also defrauds the Government through any

reimbursements to CVS in Medicare, Tri-Care/CHAMPUS, Illinois SeniorCare/Circuit Breaker,

and/or other government third-party payor programs.  On information and belief, the billing

mechanisms for such systems are similar to the "adjudications" described above for Illinois'

Medicaid program.

## COUNT I
## False Claims Act

40.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set

forth herein.  This Count is brought by Lisitza in the name of the United States under the *qui tam*

provisions of 31 U.S.C. §3730 for defendants' violation of 31 U.S.C. §3729.

41.    By virtue of the above-described acts, among others, defendant CVS knowingly

submitted, and possibly continues to submit, directly or indirectly to officers, employees or

agents of the United States, false or fraudulent claims for payment or approval for generic

ranitidine capsules.

42.    By virtue of the above-described acts, among others, defendant CVS knowingly

made, used, or caused to be made or used, and may continue to make, use, or cause to be made or

used, false records and statements to obtain payment from the United States for false or

fraudulent claims for generic ranitidine capsules.

43.    By virtue of the above-described acts, defendant conspired to defraud the United

States by getting a false or fraudulent claim allowed or paid.

12

44.     The amounts of the false or fraudulent claims to the United States were material.

45.     Plaintiff United States, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof, paid and may continue to pay defendant for illegally-switched prescriptions.

46.     From at least January 1, 1999 to the date of this Complaint, by reason of the conduct described above, the Government has been damaged in an amount that is believed to be in excess of $2,000,000 from CVS's Illinois facilities alone.  As CVS's fraudulent practices extend throughout the company in states where Government reimbursement rates make such fraud lucrative for CVS, the amount of total damages to the Government exceeds $10,000,000.

## COUNT II
### Illinois Whistleblower Reward and Protection Act

47.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Illinois under the *qui tam* provisions of 740 ILCS 175/4 for defendant's violation of 740 ILCS 175/3.

48.     CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Illinois.  CVS, at all times relevant to this action, has on information and belief operated and continues to operate pharmaceutical distribution facilities in the State of Illinois.  CVS conducts business in Illinois through 95 retail pharmacies and through its mail order pharmacy business.[5]

49.     By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or

_____

[5]For information on number of stores in each state please see CVS's investor relations web page, *http://investor.cvs.com*, visited January 27, 2003.

agents of the State of Illinois, false or fraudulent claims for payment or approval for generic ranitidine capsules.

50.    By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Illinois for false or fraudulent claims for generic ranitidine capsules.

51.    By virtue of the above-described acts, defendant conspired to defraud the State of Illinois by getting a false or fraudulent claim allowed or paid.

52.    The amounts of the false or fraudulent claims to the State of Illinois were material.

53.    Plaintiff State of Illinois, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

### COUNT III
### California False Claims Act

54.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of California under the *qui tam* provisions of the California False Claims Act, California Government Code §12651(a).

55.    CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of California. CVS, at all times relevant to this action, has on information and belief operated and continues to operate pharmaceutical distribution facilities in

14

the State of California. CVS conducts business in California through 6 retail pharmacies and through its mail order pharmacy business.

56.     By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of California, false or fraudulent claims for payment or approval for generic ranitidine capsules.

57.     By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of California for false or fraudulent claims for generic ranitidine capsules.

58.     By virtue of the above-described acts, defendants conspired to defraud the State of California by getting a false or fraudulent claim allowed or paid.

59.     The amounts of the false or fraudulent claims to the State of California were material.

60.     Plaintiff State of California, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## COUNT IV
## Delaware False Claims and Reporting Act

61.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Delaware under the *qui*

15

*tam* provisions of the Delaware False Claims and Reporting Act, Delaware Statute Title VI, Section 1201.

62.    CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Delaware. CVS, at all times relevant to this action, has on information and belief operated and continues to operate pharmaceutical distribution facilities in the State of Delaware. CVS conducts business in Delaware through 2 retail pharmacies and through its mail order pharmacy business.

63.    By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Delaware, false or fraudulent claims for payment or approval for generic ranitidine capsules.

64.    By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Delaware for false or fraudulent claims for generic ranitidine capsules.

65.    By virtue of the above-described acts, defendants conspired to defraud the State of Delaware by getting a false or fraudulent claim allowed or paid.

66.    The amounts of the false or fraudulent claims to the State of Delaware were material.

67.    Plaintiff State of Delaware, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

16

## COUNT V
### District of Columbia False Claims Act

68.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set

forth herein.  This Count is brought by Lisitza in the name of the District of Columbia under the

*qui tam* provisions of D.C. Stat. §2-308.03 *et seq.*

69.     CVS, at all times relevant to this action, sold and continues to sell

pharmaceuticals in the District of Columbia.  CVS, at all times relevant to this action, has on

information and belief operated and continues to operate pharmaceutical distribution facilities in

the District of Columbia.  CVS conducts business in the District of Columbia through 48 retail

pharmacies and through its mail order pharmacy business.

70.     By virtue of the above-described acts, among others, defendant CVS knowingly

submitted, and possibly continues to submit, directly or indirectly to officers, employees or

agents of the District of Columbia, false or fraudulent claims for payment or approval for generic

ranitidine capsules.

71.     By virtue of the above-described acts, among others, defendant CVS knowingly

made, used, or caused to be made or used, and may continue to make, use, or cause to be made or

used, false records and statements to obtain payment from the District of Columbia for false or

fraudulent claims for generic ranitidine capsules.

72.     By virtue of the above-described acts, defendants conspired to defraud the District

of Columbia by getting a false or fraudulent claim allowed or paid.

73.     The amounts of the false or fraudulent claims to the District of Columbia were

material.

17

74.     Plaintiff District of Columbia, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## COUNT VI
## Florida False Claims Act

75.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Florida under the *qui tam* provisions of Florida False Claims Act, Fl. Stat. §§68.081-68.09.

76.     CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Florida.  CVS, at all times relevant to this action, has on information and belief operated and continues to operate pharmaceutical distribution facilities in the State of Florida. CVS conducts business in Florida through 59 retail pharmacies and through its mail order pharmacy business.

77.     By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Florida, false or fraudulent claims for payment or approval for generic ranitidine capsules.

78.     By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Florida for false or fraudulent claims for generic ranitidine capsules.

18

79.     By virtue of the above-described acts, defendants conspired to defraud the State of Florida by getting a false or fraudulent claim allowed or paid.

80.     The amounts of the false or fraudulent claims to the State of Florida were material.

81.     Plaintiff State of Florida, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## COUNT VII
## Hawaii False Claims Act

82.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Hawaii under the *qui tam* provisions of Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*

83.     CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Hawaii.  CVS conducts business in the State of Hawaii through 1 retail pharmacy and through its mail order pharmacy business.

84.     By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Hawaii, false or fraudulent claims for payment or approval for generic ranitidine capsules.

85.     By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or

19

used, false records and statements to obtain payment from the State of Hawaii for false or fraudulent claims for generic ranitidine capsules.

86.     By virtue of the above-described acts, defendants conspired to defraud the State of Hawaii by getting a false or fraudulent claim allowed or paid.

87.     The amounts of the false or fraudulent claims to the State of Hawaii were material.

88.     Plaintiff State of Hawaii, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## COUNT VIII
## Louisiana Medical Assistance Programs Integrity Law

89.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Louisiana under the *qui tam* provisions of the Louisiana Medical Assistance Programs Integrity Law, Louisiana Rev. Stat. §439.

90.     CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Louisiana.

91.     By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used false, fictitious, or misleading statements for the purpose of receiving payment under the medical assistance programs which CVS was not eligible to receive for generic ranitidine capsules.

92.     By virtue of the above-described acts, defendants conspired to defraud the State of Louisiana by getting a false or fraudulent claim allowed or paid.

93.     The amounts of the false or fraudulent claims to the State of Louisiana were material.

94.     Plaintiff State of Louisiana, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

### COUNT IX
### Massachusetts False Claims Act

95.     Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Massachusetts under the *qui tam* provisions of the Massachusetts False Claims Act, Massachusetts Gen. Laws c.12 §5(A).

96.     CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Massachusetts. CVS, at all times relevant to this action, has on information and belief operated and continues to operate pharmaceutical distribution facilities in the State of Massachusetts. CVS conducts business in Massachusetts through 323 retail pharmacies and through its mail order pharmacy business.

97.     By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Massachusetts, false or fraudulent claims for payment or approval for generic ranitidine capsules.

21

98.     By virtue of the above-described acts, among others, defendant CVS knowingly

made, used, or caused to be made or used, and may continue to make, use, or cause to be made or

used, false records and statements to obtain payment from the State of Massachusetts for false or

fraudulent claims for generic ranitidine capsules.

99.     By virtue of the above-described acts, defendants conspired to defraud the State of

Massachusetts by getting a false or fraudulent claim allowed or paid.

100.    The amounts of the false or fraudulent claims to the State of Massachusetts were

material.

101.    Plaintiff State of Massachusetts, being unaware of the falsity of the claims and/or

statements made by defendant, and in reliance on the accuracy thereof paid and may continue to

pay defendant for illegally-switched prescriptions.

## COUNT X
## Nevada False Claims Act

102.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set

forth herein.  This Count is brought by Lisitza in the name of the State of Nevada under the *qui*

*tam* provisions of Nevada Rev. Stat. §357.010 *et seq.*, "Submission of False Claims to State or

Local Government."

103.    CVS, at all times relevant to this action, sold and continues to sell

pharmaceuticals in the State of Nevada.  CVS, at all times relevant to this action, has on

information and belief operated and continues to operate pharmaceutical distribution facilities in

the State of Nevada.  CVS conducts business in Nevada through 8 retail pharmacies and through

its mail order pharmacy business.

22

104.    By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Nevada, false or fraudulent claims for payment or approval for generic ranitidine capsules.

105.    By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Nevada for false or fraudulent claims for generic ranitidine capsules.

106.    By virtue of the above-described acts, defendants conspired to defraud the State of Nevada by getting a false or fraudulent claim allowed or paid.

107.    The amounts of the false or fraudulent claims to the State of Nevada were material.

108.    Plaintiff State of Nevada, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## COUNT XI
### Tennessee Medicaid False Claims Act

109.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein.  This Count is brought by Lisitza in the name of the State of Tennessee under the *qui tam* provisions of the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*

110.    CVS, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Tennessee.  CVS, at all times relevant to this action, has on

23

information and belief operated and continues to operate pharmaceutical distribution facilities in the State of Tennessee. CVS conducts business in Tennessee through 123 retail pharmacies and through its mail order pharmacy business.

111.    By virtue of the above-described acts, among others, defendant CVS knowingly submitted, and possibly continues to submit, directly or indirectly to officers, employees or agents of the State of Tennessee, false or fraudulent claims for payment or approval for generic ranitidine capsules.

112.    By virtue of the above-described acts, among others, defendant CVS knowingly made, used, or caused to be made or used, and may continue to make, use, or cause to be made or used, false records and statements to obtain payment from the State of Tennessee for false or fraudulent claims for generic ranitidine capsules.

113.    By virtue of the above-described acts, defendants conspired to defraud the State of Tennessee by getting a false or fraudulent claim allowed or paid.

114.    The amounts of the false or fraudulent claims to the State of Tennessee were material.

115.    Plaintiff State of Tennessee, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## COUNT XII
### Texas Medicaid Fraud Prevention Act

116.    Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set forth herein. This Count is brought by Lisitza in the name of the State of Texas under the *qui*

24

*tam* provisions of the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch.
36, §36.101 *et seq.*

117.   CVS, at all times relevant to this action, sold and continues to sell
pharmaceuticals in the State of Texas.  CVS, at all times relevant to this action, has on
information and belief operated and continues to operate pharmaceutical distribution facilities in
the State of Texas.  CVS conducts business in Texas through 44 retail pharmacies and through its
mail order pharmacy business.

118.   By virtue of the above-described acts, among others, defendant CVS knowingly
and intentionally presented or caused to be presented, and possibly may continue to present or
cause to be presented, a claim for services under the Texas Medicaid program for a service or
product that has not been approved or acquiesced in by a licensed physician or health care
provider.

119.   By virtue of the above-described acts, defendants conspired to defraud the State of
Texas by getting a false or fraudulent claim allowed or paid.

120.   The amounts of the false or fraudulent claims to the State of Texas were material.

121.   Plaintiff State of Texas, being unaware of the falsity of the claims and/or
statements made by defendant, and in reliance on the accuracy thereof paid and may continue to
pay defendant for illegally-switched prescriptions.

## COUNT XIII
### Virginia Fraud Against Taxpayers Act

122.   Plaintiffs incorporate by reference and re-allege Paragraphs 1-39 as if fully set
forth herein.  This Count is brought by Lisitza in the name of the State of Virginia under the *qui*

25

*tam* provisions of the Virginia Fraud Against Taxpayers Act, Ch. 3, Title 8.01, Article 19.1 *et seq.*

123.    CVS, at all times relevant to this action, after the effective date of the Virginia Fraud Against Taxpayers Act (January 1, 2003), sold and continues to sell pharmaceuticals in the State of Virginia.  CVS, at all times relevant to this action, after the effective date of the Virginia Fraud Against Taxpayers Act (January 1, 2003), has on information and belief operated and continues to operate pharmaceutical distribution facilities in the State of Virginia.  CVS conducts business in Virginia through 239 retail pharmacies and through its mail order pharmacy business.

124.    By virtue of the above-described acts, among others, defendant CVS knowingly and intentionally presented or caused to be presented, and possibly may continue to present or cause to be presented, a claim for services under the Virginia Medicaid program for a service or product that has not been approved or acquiesced in by a licensed physician or health care provider.

125.    By virtue of the above-described acts, defendants conspired to defraud the State of Virginia by getting a false or fraudulent claim allowed or paid.

126.    The amounts of the false or fraudulent claims to the State of Virginia were material.

127.    Plaintiff State of Virginia, being unaware of the falsity of the claims and/or statements made by defendant, and in reliance on the accuracy thereof paid and may continue to pay defendant for illegally-switched prescriptions.

## JURY DEMAND

128.    Plaintiffs demand trial by jury on all claims.

26

## PRAYER

129.   WHEREFORE, plaintiffs pray for judgment against defendant as follows:

     a.    That defendant CVS be found to have violated and be enjoined from future violations of the federal False Claims Act, 31 U.S.C. §3729-32; the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175; the California False Claims Act, Cal. Gov. Code §12651(a); the Delaware False Claims and Reporting Act, Del. Stat. Tit. VI. §1201; the District of Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*; the Florida False Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439; the Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A); the Nevada False Claims Act, Nevada Rev. Stat. §357.010 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*; and the Virginia Fraud Against Taxpayers Act, Ch. 3, Title 8.01, Article 19.1 *et seq.*

     b.    That this Court enter judgment against defendant CVS in an amount equal to three times the amount of damages the United States Government has sustained because of defendant's false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. §3729.

c.     That plaintiffs be awarded the maximum amount allowed pursuant to
       § 3730(d), and all relief to which they are entitled pursuant to §3730(h) of
       the False Claims Act.

d.     That this Court enter judgment against defendant CVS in an amount equal
       to three times the amount of damages the State of Illinois has sustained
       because of defendants' false or fraudulent claims, plus the maximum civil
       penalty for each violation of the Illinois Whistleblower Reward and
       Protection Act, 740 ILCS 175.

e.     That this Court enter judgment against defendant CVS for the maximum
       amount of damages sustained by each State or District because of
       defendant's false or fraudulent claims, plus the maximum civil penalty for
       each violation of the California False Claims Act, Cal. Gov. Code
       §12651(a); the Delaware False Claims and Reporting Act, Del. Stat. Tit.
       VI. §1201; the District of Columbia False Claims Act, D.C. Stat. §2-
       308.03 *et seq.*; the Florida False Claims Act, Fl. Stat. §§68.081-68.09; the
       Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*; the Louisiana
       Medical Assistance Programs Integrity Law, La. Rev. Stat. §439; the
       Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A); the Nevada
       False Claims Act, Nevada Rev. Stat. §357.010 *et seq.*; the Tennessee
       Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*; the Texas
       Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36,

28

§36.101 *et seq.*; and the Virginia Fraud Against Taxpayers Act, Ch. 3,

Title 8.01, Article 19.1 *et seq.*

f.     That plaintiffs be awarded the maximum amount allowed pursuant to 740

ILCS 175/4(d) of the Illinois Whistleblower Reward and Protection Act,

the California False Claims Act, Cal. Gov. Code §12651(a); the Delaware

False Claims and Reporting Act, Del. Stat. Tit. VI. §1201; the District of

Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*; the Florida False

Claims Act, Fl. Stat. §§68.081-68.09; the Hawaii False Claims Act, Haw.

Rev. Stat. §661-21 *et seq.*; the Louisiana Medical Assistance Programs

Integrity Law, La. Rev. Stat. §439; the Massachusetts False Claims Act,

Mass. Gen. Laws c.12 §5(A); the Nevada False Claims Act, Nevada Rev.

Stat. §357.010 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn.

Stat. §§75-1-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tx.

Human Resources Code, Ch. 36, §36.101 *et seq.*; and the Virginia Fraud

Against Taxpayers Act, Ch. 3, Title 8.01, Article 19.1 *et seq.*; and all relief

to which they are entitled pursuant to said laws.

g.     That plaintiffs be awarded interest and all costs of this action, including

expert witness fees, attorneys' fees, and court costs.

29

h.      That plaintiffs recover such other relief as the Court deems just and

        proper.


                                        Respectfully submitted,

                                        UNITED STATES OF AMERICA *ex rel.*
                                        BERNARD LISITZA, STATE OF ILLINOIS *ex rel.*
                                        BERNARD LISITZA, STATE OF CALIFORNIA
                                        *ex rel.* BERNARD LISITZA, STATE OF
                                        DELAWARE *ex rel.* BERNARD LISITZA,
                                        DISTRICT OF COLUMBIA *ex rel.* BERNARD
                                        LISITZA, STATE OF FLORIDA *ex rel.*
                                        BERNARD LISITZA, STATE OF HAWAII *ex rel.*
                                        BERNARD LISITZA, STATE OF LOUISIANA *ex
                                        rel.* BERNARD LISITZA, STATE OF
                                        MASSACHUSETTS *ex rel.* BERNARD LISITZA,
                                        STATE OF NEVADA *ex rel.* BERNARD
                                        LISITZA, STATE OF TENNESSEE *ex rel.*
                                        BERNARD LISITZA, STATE OF TEXAS *ex rel.*
                                        BERNARD LISITZA, STATE OF VIRGINIA *ex
                                        rel.* BERNARD LISITZA, and BERNARD
                                        LISITZA, individually,


                                        By: _____
                                             Attorney for Plaintiffs

Date:  January 31, 2003

Michael I. Behn
William W. Thomas
FUTTERMAN & HOWARD, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, IL 60603
(312) 427-3600